Algin William CLARK, Jr., and Herman Tracy Clark, while acting in concert each with the other, Appellants,

v.

The STATE of Oklahoma, Appellee.

No. F–76-318.

Court of Criminal Appeals of Oklahoma.

Jan. 4, 1977.

Joseph M. Watt, Larry M. Weber, Altus, for appellants.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Doug Combs, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellants, Algin William Clark, Jr., and Herman Tracy Clark, hereinafter referred

to as the defendants, were charged in the District Court, Beckham County, Case No. CRF–75–51, for the crime of Murder in the First Degree, in violation of 21 O.S.Supp. 1974, § 701.1 ¶ 2. They were convicted by the jury and sentenced to death, the mandatory punishment in effect at the time. From said judgment and sentence a timely appeal has been perfected to this Court. We would preface the body of this opinion with a notation that the defendants are currently serving a life sentence in the Federal Penitentiary at Leavenworth Kansas, for the offense of Bank Robbery in violation of 18 U.S.C., § 2113(e); this is the felony for purposes of a finding of guilt in accordance with our First Degree Murder Statute effective at that time.

The evidence introduced by the State, comprised of a total of thirty-two witnesses and various physical evidence, showed that at approximately 9:00 a.m., on the morning of January 6, 1975, two black men entered the First State Bank of Gould, Oklahoma. A struggle ensued, the result being that two male officers of the bank were rendered unconscious, (one by gunshot), and two women, Jana Robinson and Wanda Masters (the decedent) were taken as hostages. It was later determined that approximately $15,700 was missing.

After leaving the bank in a maroon Thunderbird, the hostages were blindfolded and taken to an abandoned garage south of Gould. Shortly after they were seated on a mattress in the garage, each was shot twice, the hostage Wanda Masters dying almost instantly, while Miss Robinson was able to get up and observe the defendants leaving in a northerly direction. Photographs of the decedent and the location were admitted into evidence. Shortly thereafter, a maroon Thunderbird, followed by a bright orange Volkswagen each with one black occupant, was observed pulling out from behind an abandoned farm house a short distance from the scene of the homicide. The defendant Herman Tracy Clark was arrested in the maroon Thunderbird at road block north of Gould, while the defendant Algin William Clark, Jr., was ar-

rested in the orange Volkswagen in the City of Hollis, Oklahoma. While the latter subject was being transported approximately one and one half blocks to the police station, the Volkswagen was left unattended; a subsequent search after impoundment revealed articles connected with those found with the decedent, including a .38 caliber pistol and pieces of torn cloth.

The defendant Algin William Clark, Jr., had been observed earlier at the home of his aunt and uncle, Mr. and Mrs. Bell in Hollis; a consent search later yielded approximately $15,000 in a shed behind the Bell home.

The defendants offered testimony of witnesses supporting their theory of defense; that there was another car that morning with an undetermined number of persons, raising a reasonable doubt that these defendants had done the actual shooting. The defendants declining to take the stand in their own defense, rested at this time.

■ The defendants contend as their first assignment of error that their motion to quash and set aside the information on the basis of being subjected to jeopardy of life and limb previously in the Federal System for the offense of Bank Robbery was erroneously denied. It is defendants' proposition here that the second prosecution was for the same act or transaction and was founded upon the same evidence. We cannot agree with their characterization of the situation, and must therefore rule this contention without merit.

As indicated above, the conviction in the Federal System was for the offense of Bank Robbery in violation of 18 U.S.C., § 2113(e); the conviction being herein appealed is that of First Degree Murder, premeditated murder during the commission of a felony, violating 21 O.S.Supp.1974, § 701.1 ¶ 2. We indicated in Hill v. State, Okl.Cr., 511 P.2d 604 (1973), that for the second prosecution to be prohibited by double jeopardy, it must be the same, both in law and in fact, as the situation under which the first prosecution was instituted. It should be preliminarily noted that we interpret

that legislative intent of both sovereigns as contemplating punishment for both crimes; and it is our wish that this intent be furthered. In accordance therewith, we could summarily dispose of this assignment, and find contentions jeopardy inappropriate.

However, to give maximum credence to defendants propositions we will assume that there is some question of applicability of jeopardy, and distinguish on the basis of the Oklahoma Rule thereon. A comparison of the two statutes reveals that evidence would be necessary for conviction of the Oklahoma crime, not necessary for the Federal crime. The applicable portion of the Federal Statute refers only to the death of any person, not to the degree of homicide; the correlative Oklahoma requirement is that the homicide be with premeditated design. The Federal Rule countenances any death, whether it be involuntary manslaughter, negligent homicide, or premeditated murder; the Oklahoma Statute is decidedly more specific.

We thus decline to apply the proscription of jeopardy.

■ The defendants' second assignment of error is that their motion to suppress evidence made prior to and during the trial was wrongfully overruled. The evidence objected to was that obtained from the defendant Algin William Clark, Jr.'s Volkswagen; as indicated, the automobile was left unlocked and unattended for a period of time sufficient to transport the defendant to the Hollis, Oklahoma jail (approximately one and one half blocks away) and then return. We take the position that these motions were properly overruled, and therefore the assignment of error is without merit.

■ The State is not under a burden of negating absolutely any and all possibility of tampering with or substitution of the evidence while it is in custody or control of the law enforcement agency; where only the barest speculation could permit a conclusion of tampering with the evidence, it will be admitted and what doubt there is can go to its weight rather than its admissibility. *Contu v. State*, Okl.Cr., 533 P.2d 1000 (1975). The chain of custody in the principal case was substantially established, with the only omission being a brief (probably less than 30 minutes) period of time, during which the evidence could have been tampered with. But, this is rank speculation, and finding the absence of a greater likelihood of wrongdoing, we are not convinced that lower court ruling should be disturbed.

■■ The defendants' third assignment of error concerns the admission by the trial court of prejudicial and inflammatory physical evidence; specifically a black-and-white photograph of the body of the decedent at the scene of the homicide. The often-stated test of the admissibility of allegedly gruesome photographs is that they should be relevant to some issue in the case; if they are relevant, the probative value will be weighed against the prejudicial effect. It is our opinion that photograph was an aid to the jury in corroboration of various testimony, especially that of Miss Robinson concerning the actual shooting. Since we find it probative in this regard, it was within the trial court discretion to admit it into evidence, *Born v. State*, Okl.Cr., 397 P.2d 924 (1964), and this assignment of error, is therefore without merit.

■ The defendants next contend that the court erred in overruling their demurrer to the evidence at the close of the State's evidence, alleging the element of premeditation was absent from the State's evidence. The oft-stated rule as to ruling on a demurrer was repeated in *Towry v. State*, Okl.Cr., 540 P.2d 597 (1975), as follows:

" ' . . . where there is competent evidence reasonably tending to sustain the allegations of the charge, the trial court should not sustain a demurrer to the evidence.' "

Quoting *Lauhoff v. State*, Okl.Cr., 508 P.2d 285 (1973). We would agree with the defendants' proposition that premeditated design to effect death is a material element of the offense, but we cannot agree that competent evidence tending to establish this

element was lacking. It has been repeatedly held by this Court that if the jury, in consideration of all the facts and circumstances, can reasonably and satisfactorily infer the existence of the premeditated design, they will be warranted in so doing, *Clouse v. State*, Okl.Cr., 389 P.2d 1002 (1964). The facts in the principal case reveal that two hostages were taken in a violent bank robbery, blindfolded and taken into an isolated building, and each shot twice. It is our position this presents sufficient facts from which the jury could find premeditation, and we therefore rule this contention to be without merit.

█ The defendants also contend in this assignment of error that the statute under which they were convicted is unconstitutionally vague, indefinite, and uncertain. A similar contention was made in *Williams v. State*, Okl.Cr., 542 P.2d 554 (1975), wherein we held at page 586:

"We are of the opinion that this aspect of the statute cannot seriously be argued to be indefinite or vague  . . . "

This is dispositive of defendants contention, and further discussion is therefore unwarranted.

█ The defendants' fifth assignment of error charges their motion to sever made prior to trial was improperly overruled. We will reiterate here the well-established rule that the granting of this motion is a matter within the discretion of the trial court; absent a clear showing of prejudice, this Court will not overrule its decision. *Duke v. State*, Okl.Cr., 548 P.2d 230 (1976). The defendants contend that the State possessed extra judicial statements allegedly made by each defendant tending to incriminate their co-defendant, and had no knowledge as to whether or not the State would attempt to introduce them. However, at the trial, no purported admissions or confessions were sought to be introduced, neither defendant took the stand, the defendants offered a unified defense, and the evidence actually introduced against both defendants could have been introduced against either. Further, the defendants have not perfected their record to this court in that we have no

evidence of the purported admissions held by the State; we feel such is essential to a qualitative assessment of the defendants propositions, and in its absence are constrained to find lack of prejudice. The defendants bear the responsibility of supporting their assignments of error, and if they fail, this Court will not assume it for them.

█ The defendants next contend the existence of reversible error in that the trial court refused their instruction as to murder in the second degree, based on their proposition that the armed robbery was completed before the homicide, therefore the latter did not occur during the commission of the felony. The defendants would have us here rule that once the technical crime is complete, what follows is "new material," and the felony is no longer to be considered; with this we cannot agree. *Oxendine v. State*, Okl.Cr., 350 P.2d 606 (1960) is of some assistance in this regard. In that case when a similar argument was interposed, we indicated that a homicide, committed to prevent detection and identification of the perpetrators, constituted murder. It is our intention to adopt the 'res gestae' interpretation in disposing of this assignment of error: if the homicide is committed during the one, continuous transaction, the acts are so closely connected as to be inseparable in terms of time, place, and causal relation, and the actions tend to be explanatory and incidental to each other, the homicide has been committed during the felony in our statutory sense. See, *Littke v. State*, Okl.Cr., 300 P.2d 684 (1956); 40 C.J.S. Homicide § 21, pages 870 and 871. The principal case clearly falls within this interpretation; the decedent was a hostage taken during the armed robbery, the homicide occurred only minutes after the robbery, within a few miles of the bank itself, and the perpetrators were (presumably) trying to avoid detection and implement their escape. Finding the defendants proposition of law not applicable in this jurisdiction, we must find this contention to be without merit.

█ We now deal with the defendants' final assignment of error which alleg-

es the unconstitutionality of 21 O.S.Supp. 1974, § 701.1 due to *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). This issue was determined by this Court in *Riggs v. Branch*, Okl.Cr., 554 P.2d 823 (1976). We therein held that the United States Supreme Court's decisions in *Woodson v. North Carolina*, —— U.S. ——, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Roberts v. Louisiana*, —— U.S. ——, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), left unaffected the validity of the 1973 Oklahoma Statutes defining First Degree Murder. Our conclusion in *Riggs*, supra, was that the Supreme Court's decisions prohibited only the imposition of the death penalty in those cases where the jury had no discretion in the rendering of that sentence. In accordance therewith, we herein modify the sentences from death to sentences of LIFE IMPRISONMENT.

For the above and foregoing reasons, it is our decision that the judgment and sentences appealed from are, as MODIFIED, otherwise AFFIRMED.

BRETT, P. J., and BLISS, J., concur.